338

MAURICE A. REICHMAN, as Commissioner of the Department of Rent and Housing Maintenance, Respondent, v. BRAUSE REALTY, INC., et al., Appellants.

First Department, June 18, 1970.

*Bernard Botein*, of counsel (*Stanley M. Kolber, Arthur Kramer, Harvey Tropp* and *Michael H. Switzer* with him on the brief; *Milton Brause,* attorney), for appellants.

*Harry Michelson* of counsel (*Morton Fried* with him on the brief; *Daniel W. Joy,* attorney), for respondent.

McNALLY, J.  In this injunction action, defendants appeal from a judgment which directed that they be permanently

enjoined and restrained from (1) engaging in a course of conduct which interferes with or disturbs, or is intended to interfere with or disturb, the comfort, repose, the peace and quiet of any residential tenant in the premises owned and maintained by the defendants and located at 135 East 50th Street in the Borough of Manhattan, and (2) leasing, renting or otherwise giving possession to or permitting any person, firm or organization to occupy space in the premises for commercial or nonresidential purposes; and further enjoining the defendants from demanding or causing any tenant to vacate their accommodations without lawful process and to refrain from causing any tenant to vacate by reason of interruption or discontinuance of essential services or threats.

We note that the learned trial court made provisions for changes in the future by reserving jurisdiction to modify the injunction and consequently the judgment does not perpetually freeze the rights of the landlords. Nevertheless, it is our opinion that the second decretal paragraph is too broad since it would preclude commercial renting of residential space validly vacant.

Recital of the facts is in order to establish the basis for the cause of action. Plaintiff-respondent is the Commissioner of the Department of Rent and Housing Maintenance in New York City. Defendants-appellants are the managing agent of the nine-story apartment building, Brause Realty, Inc., and the long-term lessees of the building doing business as 50 Realty Co. Plaintiff commenced this action predicated on the statutory authority contained in subdivision a of section Y51–11.0 of the Administrative Code of the City of New York authorizing an injunction against violation of the applicable provisions of the Administrative Code. '' a. Whenever in the judgment of the city rent agency any person has engaged in or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of subdivision nine of section one of the state enabling act, or section Y51–10.0 of this title, the city rent agency may make application to the supreme court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, or for an order directing the landlord to correct the violation, and upon a showing by the city rent agency that such person has engaged or is about to engage in any such acts or practices, a permanent or temporary injunction, restraining order, or other order shall be granted without bond. Jurisdiction shall not be deemed lacking in the supreme court because the defense is based upon an order of an inferior court.''

Section Y51–10.0 provides:

340

"d. (1) It shall be unlawful for any person, with intent to cause any tenant to vacate housing accommodations, or to surrender or waive any rights of such tenant under this title or the regulations promulgated thereunder, to engage in any course of conduct (including but not limited to, interruption or discontinuance of essential services) which interferes with or disturbs or is intended to interfere or disturb the comfort, repose, peace or quiet of such tenant in his use or occupance of the housing accommodations. * * *

"(3) The provisions of this subdivision d shall not apply to any acts performed in good faith and in a reasonable manner for the purpose of operating, maintaining or repairing any building."

The complaint alleges that in contravention of the rent law and regulations, the defendants engaged in a prohibited course of conduct which interfered with the tenants' use and enjoyment of their apartments. The complaint alleges the specific activities of the landlord included illegal commercial renting of apartments in the premises, discontinuance of a switchboard in a manner resulting in severe hardship and inconvenience to tenants, and failing to maintain required essential services in the premises.

The relief sought is an injunction against commercial renting, discontinuance of commercial tenancies already in the premises, a prohibition against interference with and threats of discontinuing essential services, and an injunction against direct and indirect acts causing tenants to vacate their apartments. A temporary injunction issued in favor of the tenants enjoining new commercial, business or other nonresidential renting.

The trial took approximately 10 days and the record comprises 1199 pages. Thirteen tenants testified for the plaintiff. The parties stipulated additional tenants would be deemed to have testified in support of plaintiff's case. The stipulation is in the form of charts specifying 25 tenant-witnesses, and summarizing the nature of the testimony the tenants would have given if called.

The defendants produced seven witnesses, none of whom had knowledge of the facts testified to by the tenants and other witnesses of the plaintiff. No principal, officer, employee or agent of the landlords took the stand.

The individual appellants obtained a 93-year lease on the premises in 1966. At that time the building was a wholly residential apartment house containing 107 apartments. In September, 1967, the landlords filed an application with the New York City Building Department to convert the entire premises for office occupancy.

At all relevant times, the premises were housing accommodations subject to regulation under section 13 of the City Rent, Eviction and Rehabilitation Regulations. (*Matter of Sipal Realty Corp.*, 8 N Y 2d 319.) Defendants never applied for a certificate of exemption under section 13.

Defendants commenced alterations for office occupancy long prior to obtaining a certificate of occupancy authorizing such use.

In September, 1969, there were vacancies in some 40 of the 107 apartments and defendants proceeded to convert the premises to commercial renting. The law in the circumstances is quite clear. In *Matter of Sipal Realty Corp.* (8 A D 2d 355, mod. 8 N Y 2d 319) we held that section 13 of the State Rent and Eviction Regulations applied to residential space actually converted to commercial or professional use and said space continues to be subject to residential rent control until and unless an exemption is issued by the Administrator. The Court of Appeals agreed with our holding in the following language (p. 324): " While we are in agreement with the Appellate Division, we believe that the order should be modified so as to grant a new trial, in order to allow the petitioner to introduce the section 13 certificates secured from the Rent Administrator subsequent to the decisions of the Appellate Division."

At page 322, the court also said: " Under the rules governing residential rent a landlord who has a building which is currently used for residential purposes, may seek decontrol, subject, however, to the provisions of section 13. Before a certificate is issued approving the conversion to business space the Rent Administrator conducts such inquiry as he deems necessary to determine whether the conversion was made in good faith."

The Court of Appeals further held (p. 323): " Proof of the exercise of the duty of supervision which was imposed on the Administrator by the Legislature may not be supplanted by the bare proof of unilateral physical conversion from a residential to a business use wrought by the landlord. If the bare fact of the physical change in the character of the space is held to be the determinative factor, the landlord then will be substituted as the sole arbiter in place of the Administrator."

The learned trial court found and the record establishes the large number of vacant apartments brought about by defendants were for the acknowledged objective of converting them into commercial units. The vacancies did not arise from passive acquiescence by tenants, but resulted from unscrupulous and harassing tactics on the part of the defendants.

Among the acts committed against the tenants by the defendants were the following: 100 actions and appeals commenced against tenants during a period of less than two years, including an action for 60 cents after refusal of tender; refusal to accept mail for tenants; making demands for rent at unreasonable times, including 9:30 A.M. on New Year's Day; removal of lobby furniture and replacement by old worn substitutes; removal of the entrance door and replacement of a door set in cinder blocks; removal of the switchboard without notice; permitting the bell and buzzer system to become inoperative and allowing that situation to prevail for over three months; closing the laundry room for a four-month period; refusal to accept packages requiring signature; pursuing a course of conduct calculated to irritate and annoy with respect to the services to which tenants were entitled, including inspection, repairs and elevator services.

The record amply sustains the findings of the trial court and demonstrates the purpose of the defendants was to annoy, harass and molest the tenants in order to compel them to vacate the residential space. In these circumstances, it is irrelevant that defendants obtained a zoning variance for commercial purposes. The zoning variance did not serve to decontrol the premises; it merely enabled an application for decontrol under section 13 for a purpose consistent with the zoning variance, provided the Administrator found good faith and the absence of any intent to evade the law or regulations. Here there has been no application in accordance with section 13.

We find no merit in the contention the owners were improperly joined and we hold that subdivision d of section Y51–10.0 satisfies the constitutional requirement of certainty by giving sufficient notice of the proscribed course of conduct.

Appellants may not rely on a conversion for commercial occupancy made in violation of a preliminary injunction. Nevertheless, the decree should not preclude commercial renting of residential space validly vacant. In the present posture, the injunction prohibits commercial lettings as to any vacancy, however caused, and would prevent commercial renting of a unit which has become vacant in the past or will become vacant in the future even if the vacancy was voluntary.

Accordingly, we modify the judgment, on the law and the facts, to the extent of adding to decretal paragraph 2, after the word " purposes ", the following: " except as provided in Section 13 of the City Rent Regulations ".

The paragraph to read: " 2. Leasing, renting or otherwise giving possession to or permitting any person, firm or organization to occupy space in the subject premises, 135 East 50th

Street, New York, New York, for commercial or nonresidential purposes; except as provided in Section 13 of the City Rent Regulations, and it is further ", and as so modified, affirmed, without costs.

Settle order providing for amended judgment on notice.

CAPOZZOLI, J. P., McGIVERN, NUNEZ and TILZER, JJ., concur.

Judgment unanimously modified, on the law and on the facts, to the extent of adding to decretal paragraph 2, after the word "purposes", the following: "except as provided in Section 13 of the City Rent Regulations ".

The paragraph to read: " 2. Leasing, renting or otherwise giving possession to or permitting any person, firm or organization to occupy space in the subject premises, 135 East 50th Street, New York, New York, for commercial or nonresidental purposes; except as provided in Section 13 of the City Rent Regulations, and it is further ", and as so modified, affirmed, without costs and without disbursements.

Settle order providing for amended judgment on notice.