■ ELI HADDAD CORP., Appellant, v CAL REDMOND STUDIO et al., Respondents. — Order, Supreme Court, New York County (David Edwards, J.), entered January 24, 1984, *inter alia*, (1) denying plaintiff's motion for multiple relief, granting summary judgment, dismissing defendants' affirmative defenses and requiring payment of use and occupancy pending the outcome of the action and (2) granting defendants' motion for a stay of the action pending determination by the New York City Office of Loft Enforcement on the issue of whether the tenancy is protected by article 7-C of the Multiple Dwelling Law, unanimously modified, on the law, without costs or disbursements, only to the extent of granting the branch of plaintiff's motion directing defendants to pay use and occupancy to the landlord at the rate provided for in the lease on each rental due date, and otherwise affirmed. ¶ Plaintiff is the owner and landlord of the building, 5 West 20th Street, New York, New York, located within the Chelsea district. The building is a five-story building, defendant having occupied the third floor as a tenant pursuant to a commercial lease entered into on October 1, 1977 and which expired on September 30, 1982. Prior to commencement of this action, another tenant filed an "omnibus loft grandfathering application," alleging that tenants in the building had occupied the premises residentially and were entitled to the protection of the Loft Law (L 1982, ch 349, eff June 21, 1982). Upon expiration of defendant's lease, the landlord served a 30-day notice directing defendant to vacate, claiming that it was improperly using the premises for joint living-working quarters. This action was brought on December 1, 1982 for ejectment, damages for use and occupancy and attorney's fees. The answer included three affirmative defenses, (1) plaintiff had waived any right to claim a breach of the lease by having accepted rent with knowledge of the residential occupancy, (2) defendants were entitled to the protection of article 7-C of the Multiple Dwelling Law (Loft Law) and (3) the landlord could not resort to eviction as a remedy. The tenant also interposed three counterclaims, including, *inter alia*, a request for a declaratory judgment that the tenant was entitled to continue in possession under the protection of the Loft Law. ¶ We find ourselves in agreement with Special Term, staying the action pending determination by the Loft Board on the issue of coverage under the Loft Law. Such a result has been directed in other cases (see *465 Greenwich St. Assoc. v Schmidt,* 116 Misc 2d 62, 65; *Axelrod Co. v Duffin & French,* NYLJ, Sept. 3, 1982, p 6, col 1) and is in accord with our recognition in other cases that, while concurrent jurisdiction does exist, where there is an administrative agency which has the necessary expertise to dispose of an issue, in the exercise of discretion, resort to a judicial tribunal should be withheld pending resolution of the administrative proceeding. As we observed in another context in *Greenthal & Co. v 301 East 21st St. Tenants' Assn.* (91 AD2d 934, 935), "A contrary determination would unwisely and improperly immerse the court in issues patently within the expertise of the administrative body." Clearly, the coverage issue raised here is within the special competence of the Loft Board and application of the doctrine of primary jurisdiction mandates a stay pending disposition of the issue at the administrative level by the agency with the responsibility for determining whether the building meets the definition of "interim multiple dwelling" in subdivisions 1 and 2 of section 281 of the Multiple Dwelling Law. ¶ We also agree with the disposition at Special Term denying the motion to dismiss the affirmative defense of waiver. While the landlord relies upon the nonwaiver clause of the

lease and argues that residential use amounts to a building code violation, the factual issue cannot be resolved solely upon the affidavits adduced (see *Taylor v Haddad Corp.,* 118 Misc 2d 253, 261). ¶ However, we find error in the failure of Special Term to direct defendants to pay use and occupancy at the rate currently provided for as rent on each rental due date and, accordingly, modify the order to that extent (see *Pilgreen v 91 Fifth Ave. Corp.,* 91 AD2d 565; *Corris v 129 Front Co.,* 85 AD2d 176, 180; *Lipkis v Pikus,* 99 Misc 2d 518, 520, affd 72 AD2d 697). Such a result, in our view, accommodates the competing interests of the parties in affording necessary and fair protection to both parties, to the tenant through possession, pending determination of the issue by the Loft Board, and, at the same time, to the landlord by requiring the tenant to pay the landlord for use and occupancy. As was observed by the Appellate Term in *Lipkis v Pikus* (99 Misc 2d, at p 520), "Having entered into possession fully cognizant of the existing realities, tenants should not now be permitted to reap the benefits of occupancy and, at the same time, avoid the payment of rent." Concur — Sandler, J. P., Asch, Lynch and Kassal, JJ.